PAINE v. WILLSON.

(Circuit Court of Appeals, Eighth Circuit.    June 8, 1906.)

No. 2,317.

1. COURTS—FEDERAL COURTS—STATE RULES OF PROPERTY PREVAIL IN.
    Rules of property established by the decisions of the highest judicial tribunal of a state prevail in the federal courts in the determination of the rights of parties to property situated therein where no question of right under the Constitution and laws of the nation and no question of general or commercial law is involved.

    [Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 958–968.

    State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. TAXATION—DESCRIPTION IN ASSESSMENT IN NORTH DAKOTA—SUFFICIENCY.
    The decision in Sheets v. Paine, 86 N. W. 117, 10 N. D. 103, established the rule that in North Dakota a description of land in an assessment roll, which is headed "Real Estate Assessment of Osago Township," etc., but which omits from the particular description the numbers of the government township and range in which the land is situated, is fatally

defective, although the fact is admitted or proved that the township of Osago was organized from the government township in which the land is situated, and this rule prevails in the federal courts in determining rights to property in that state.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, §§ 720-735.]

**3. TRIAL—EVIDENCE—WAIVER OF OBJECTIONS MAKES EFFECTIVE.**

Parties may by stipulation, by silent acquiescence, or by failure to except to admitting rulings waive objections to inadmissible evidence, on the ground that it is not the best, on the ground that it was not properly taken, and on other grounds. Evidence thus received may establish the fact in controversy as conclusively as the best evidence regularly procured.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 260-266; vol. 20, Cent. Dig. Evidence, § 2420.]

Hook, Circuit Judge, dissenting.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of North Dakota.

Seth Newman, Daniel B. Holt, and John S. Frame, for appellant.

C. J. Murphy and Fred S. Duggan, for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This is a suit in equity brought by Frank A. Willson to remove the cloud of certain tax deeds and of certain certificates of tax sales held by the defendant, Paine, from his title to the southwest quarter of section 10, in township 150 north, of range 60 west, in Nelson county, in the state of North Dakota, and to quiet the title thereto in the complainant. A decree to that effect was rendered. In reaching its conclusion the court below held that two certificates of tax sales were void because the following description in the assessor's roll, upon which the levies and sales were based, was fatally defective:

Real estate assessment of Osago Township, Nelson County, North Dakota, for the year 1892:

| Owner's Name. | Description. | Section or lot. | Twp. or Block. | R. |
|---|---|---|---|---|
| | | | 150 | 60 |
| Frank A. Willson. | S. W. ¼ | 10 | | |

Opposite the name of Willson there was no number of any township or of any range, and there were no ditto marks. The court below was of the opinion that the absence of the number of any township or of any range and of any ditto marks in this description was fatal to the certificates of sale, under the decision of the Supreme Court of North Dakota in Sheets v. Paine, 10 N. D. 103, 105, 86 N. W. 117, and this ruling is assigned as error.

The question which this specification of error presents is not whether or not this court would be of the opinion that the description here presented was sufficient in the absence of controlling authority It is whether or not the Supreme Court of North Dakota has decided that such a description is fatally defective, for the decision of that court upon such a question establishes a rule of property in that state which

must prevail in the federal courts. Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260; Percy v. Cockrill, 4 C. C. A. 73, 82, 53 Fed. 872, 877; Madden v. Lancaster Co., 12 C. C. A. 566, 570, 65 Fed. 188, 192; Union Pac. R. Co. v. Reed, 25 C. C. A. 389, 394, 80 Fed. 234, 239; Traer v. Fowler (C. C. A.) 144 Fed. 810, decided by this court at the December term, 1905. Counsel for the appellant deny, and counsel for the appellee assert, that the Supreme Court of North Dakota has so decided in Sheets v. Paine, and that this court has so held in Paine v. Germantown Trust Co. (C. C. A.) 136 Fed. 527. Let us, in the first instance, present clearly to our minds the question decided in these cases and the way in which it was presented.

In Sheets v. Paine the description in the assessment roll was under the heading: "Real property assessment in the town of Field, county of Nelson, North Dakota, 1890," and it disclosed the same defect as that which appears in the case at bar. The land there in controversy was in township 150, range 58. These numbers did not appear in the description of this land upon the assessment roll. Counsel for the appellant sets forth in his brief a portion of the record in that case, which is conceded to be correct, and from which it appears that the counsel for the defendant asked this question: "Now, Mr. Gordon, the township of Field is composed of what congressional township?" The plaintiff objected to the question, "on the ground that it is incompetent, irrelevant, immaterial; the assessment book cannot be varied or explained by parol testimony." There was no ruling or exception, and the witness answered, "It is township 150, range 58, known as Field township." After the examination had proceeded through two pages of printed testimony, the defendant asked the witness this question: "Is it a fact that that congressional township was organized into the civil township of Field?" No objection was made to this question, and the witness answered "Yes." When the case was presented to the Supreme Court of North Dakota upon this record, it held that the description was fatally defective.

In Paine v. Germantown Trust Co. (C. C. A.) 136 Fed. 527, the description in the assessor's roll was headed: "Real property assessment for the township of Dahlen, county of Nelson, and state of North Dakota, for the year 1894." The land was in government township 154, range 57, and these numbers did not appear in the description of the complainant's land in the assessor's roll. The parties stipulated at the trial that "the township of Dahlen, Nelson county, North Dakota, named in the heading of each of said assessment rolls, is and was at the time said assessments were respectively made the government township numbered 154 in range 57 in said county," and that the stipulation was "made for the purpose of use as evidence of the facts herein stated upon the trial of this action, and to dispense with the necessity of introducing the records or certified copies of the records bearing upon said matter." That portion of this agreement which contained the contract that Dahlen township was government township 154, range 57, was objected to by the defendant on the grounds "that the same is immaterial, incompetent, and that the assessment roll cannot be aided in determining the description of the land attempted to

be described by oral or other testimony than the assessment roll itself, but must be determined from the face of the assessment roll itself." These objections were overruled, and an exception was reserved, so that when the case came to this court all objections to the character of the evidence of the fact that the civil township of Dahlen was the government township 154 of range 57 had been carefully eliminated by the stipulation, that fact had been admitted, and the only question left was its effect. This court held that the decision in Sheets v. Paine was controlling, that under it the fact that the government township was the civil township was immaterial, and that the description was fatally defective. These dicisions appear to rule the case in hand. Counsel for the appellant, however, attempt to distinguish them. They say that in the Sheets case the fact that the civil township of Field was the government township 150, range 58, was proved by parol testimony over the objection of the plaintiff, and that in the Germantown Trust Company Case the stipulation that the civil township of Dahlen was the congressional township 154, range 57, was received in evidence over the defendant's objection, while in the case at bar the stipulation of the fact that Osago township is government township 150, range 60, was received in evidence without objection. But while the court held in the Sheets Case that the identity of the civil township and the government township could not be proved by parol, this was not all of its decision, nor was it the basic rule declared by the court in that case upon which the objection to the evidence was sustained. The gist of that decision was that the fact of the identity of the townships could not be proved to modify or aid the assessment by any evidence outside the record of the assessment itself. The court quoted its own words in Power v. Bowdle, 3 N. D. 107, 54 N. W. 404, 21 L. R. A. 328, 44 Am. St. Rep. 511, where it declared that "the law requires a definite record, and no other evidence of the assessment is competent," said that: "To this it may be added that the rights of a purchaser at a tax sale are fixed at the time of his purchase, and his title depends upon the validity of the proceedings had anterior to the purchase. Nor can his rights be enlarged by any evidence introduced to supply fatal omissions which constitute defects which are fundamental and jurisdictional to the tax," and decided that the absence of the numbers of the township and range was fatal to the description. In the case of the Germantown Trust Company the defendant expressly stipulated that the agreement that the civil and congressional townships were identical should take the place of, and obviate the production of, the records which proved that fact, and thereby limited his objection to his contention "that the assessment roll cannot be aided in determining the description of the land attempted to be described by oral or other testimony than the assessment roll itself, but must be determined from the face of the assessment roll itself." This stipulation left the fact of the identity of the townships conclusively established in that case, for there was no evidence to the contrary, and no question of the character of the proof remained for consideration when the case reached this court. Forms and rules for the taking and introduction of evidence are prescribed by statutes and de-

cisions, which give to the opposing party the right to the production of the best evidence of a fact, but he may waive these rules, permit the introduction of inferior evidence, or stipulate the existence of the fact, and when he does so that fact is deemed established by the best evidence by which it is provable. U. S. v. Homestake Min. Co., 54 C. C. A. 303, 311, 117 Fed. 481, 489; Walton v. Railway Co., 6 C. C. A. 223, 225, 56 Fed. 1006, 1008; National Loan & Investment Co. v. Rockland Co., 36 C. C. A. 370, 372, 94 Fed. 335, 337. The result is that the alleged distinction between the former cases and that in hand is not founded in fact. Every question of the competency of the evidence in the Germantown Trust Company Case to prove the identity of the townships had been extracted before that case reached this court, and the only question presented for decision by the record was whether or not the description could be aided by any proof or agreement of the fact of the identity of the townships de hors the description itself, and whether or not the description was sufficient. This court answered both these questions in the negative.

Attention is called to the fact that the stipulation in the case at bar recites not only that Osago township is government township 150, range 60, but also that it was duly organized as a civil township under that name by the board of county commissioners of Nelson county in 1884 from government township 150, range 60, while the proof and stipulation in the former cases are limited to the fact that the civil townships are the government townships, respectively. There is, however, but one way in which civil townships can be brought into being under the laws of North Dakota, and that is by their organization, in accordance with the statutes of that state, by the boards of county commissioners of the counties in which they are respectively situated. Hence an agreement or proof of the fact that a civil township is a government township without more is a stipulation or proof, as the case may be, of the fact that it was duly organized from the government township by the proper board of county commissioners.

Finally, counsel contend that the decision that the absence of the numbers of the township and range from the description in the Sheets Case was a fatal defect is not controlling, because the court also decided in that case that the description was defective for another reason. The position is untenable. Where a court places its ultimate adjudication upon two or more propositions of law which it properly discusses and decides, either one of which is sufficient to sustain its conclusion, each decision of each of the propositions is within the limits of the case, and is a conclusive and binding adjudication of the court. Union Pac. Ry. Co. v. Mason City & Ft. Dodge R. Co., 64 C. C. A. 348, 354, 128 Fed. 230, 236. The Supreme Court of North Dakota held in the Sheets Case that the absence from a description in an assessment roll headed with the name of the civil township, which had been organized from the government township in which the land was situated, of the numbers of the government township and range was a fatal defect. 10 N. D. 105, 86 N. W. 117. It is true that it also held that parol evidence that the plaintiff's land was located in the government township was incompetent. This, however, was not the

gist of its decision. The essence of it was that no evidence was effective to cure the absence of these numbers from the description, and that the fact that the government township had been duly organized into the civil township whose name headed the list was immaterial.

In Paine v. Germantown Trust Company, where the fact that the civil township of Dahlen, whose name headed the roll, had been organized from the government township in which the land was situated had been admitted, and all objections to the character of the proof of this fact had been eliminated by a written stipulation, this court so construed the decision in the Sheets Case, and held in deference to it that the absence of the numbers of the government township and range was fatal to that description. In every essential feature pertinent to the sufficiency of the description in the case at bar its facts are identical with those in the Sheets Case and in the case of the Germantown Trust Company, and the description in hand cannot be sustained without disregarding or overruling the decisions in those cases. The conclusion is that the decision in the Sheets Case is controlling in this case, that the description in the assessment roll was fatally defective, and that the decree below must be affirmed.

HOOK, Circuit Judge (dissenting). I am constrained to express my dissent in this case, not alone because I think that the opinion of the Supreme Court of North Dakota in Sheets v. Paine, 10 N. D. 103, 86 N. W. 117, has been misapprehended, but also for the reason that the rule of the foregoing opinion may seriously interfere with the taxing machinery of that state. In effect, it is said that the original descriptive designations of lands by section, township, and range as made at the survey thereof by the national government are sacred and unalterable, and are not subject to a rechristening by the state authorities for purposes of taxation; that the tax rolls must describe the lands as the national government described them, although a change of descriptive designation has been made by the lawfully constituted authorities, acting under the laws of the state, and recorded in the public records of the counties in which the lands are located. With equal reason it may be said that, if after a quarter section of land adjacent to a town has been platted into outlots, with a selected name for the subdivision specified upon the plat, the plat duly certified and acknowledged as required by law, and recorded in the office of the register of deeds of the county, should any particular numbered lot in the subdivision so created and made matter of public record get upon the assessment roll for taxation without designation of the section, township, and range in which it is located, the tax imposed would be absolutely void because of a fatal defect in description. This would be so obviously at variance with well-established modes of procedure in assessment and taxation as to attract attention. But it is very properly observed that the question is not what the opinion of this court would be in the absence of controlling authority, but it is whether such a description as that before us has been held to be fatally defective by the Supreme Court of North Dakota. It is therefore important (1) to examine the description before us and the proof of—

fered to sustain it, and (2) to ascertain what was determined by that court in the case of Sheets v. Paine. In the case now before us Willson sued Paine to remove the cloud of certain tax claims upon his property, which he described in his bill of complaint as the southwest quarter of section 10, in township 150, of range 60 west, in Nelson county, North Dakota. The assessment roll which was at the foundation of Paine's tax claim showed that the land was in Osago township, Nelson county, but it did not show in specific terms that it was in township 150 of range 60 of the government survey Thereupon Paine, to uphold his tax claim, offered a stipulation by counsel that prior to the tax proceedings in question Osago township had been duly organized as a civil township out of township 150 of range 60 of the government survey by the board of county commissioners of Nelson county, and it is said that upon the authority of Sheets v. Paine the stipulation was incompetent. There was statutory authority for the action of the board in giving the township a new name. A North Dakota statute provided that, upon petition of a majority of the legal voters of a township according to government survey to be organized as a civil township, the board of county commissioners should forthwith proceed to fix and determine the boundaries of such new township, to name the same, and to make a full report of all its proceedings in relation thereto, and file the same with the county auditor. Therefore the action of the board created a legal identity between Osago township and township 150, range 60, of the government survey. It was an official rechristening of the township under the authority of law, and the evidence of it was upon the public records of the county. The proof tendered covered the acts and proceedings of the board. There was no attempt whatever to use oral evidence to supplement a defective assessment roll. Osago township and township 150 of range 60 were the same in law, and it was entirely proper for the taxing officers to adopt either description. The land owner who contested the validity of the tax could not destroy the effect of what was lawfully done and shown by the public records by describing the land in his bill of complaint according to the government survey.

As to Sheets v. Paine, 10 N. D. 103, 86 N. W. 117. The closest scrutiny of the opinion in that case does not disclose that such a question as that before us was presented or decided. Not a word of discussion of it can be found. The court there held that to make the figures 150 under the word "township" and 58 under the word "range" applicable to a description of a quarter section further down on the page, there should have been ditto marks opposite it and under the figures above; and then the court said:

"To cure this glaring omission in the assessment, the defendant, against objection, introduced oral evidence tending to show that the lands opposite the name of Andrew Lewis were in fact located in congressional township numbered 150 of range 58. This evidence was wholly incompetent to supply a radical defect in description in an assessment."

Again, in considering the tax of another year, as to which there was a similar defect in the assessment roll, the court said:

"This assessment was sought to be bolstered up by oral evidence to the effect that the lands in question were in fact situated in congressional township numbered 150 of range 58. The evidence was incompetent for reasons already advanced in this opinion."

The syllabus of that case, prepared by the court, as required by law, contains further indication, if any is needed, of what it intended to and did decide. The first paragraph, after reciting the condition of the assessment roll as I have described it so far as it related to the point now before us, thus proceeds:

"Against objection, defendant offered oral evidence tending to show that the lands were in fact situated in township 150 of range 58. *Held*, that the description was fatally defective, and could not be cured by oral evidence. The assessment was totally void, and the defect in the description was one going to the ground work of the tax, and jurisdictional."

Now what is the fair construction of that opinion? It is that oral evidence is not admissible to cure a defective description of a tract of land in a jurisdictional step in a tax proceeding. And while courts may differ in the application of it, the doctrine as so expressed is not new. It finds support everywhere. But to fit it to the case before us it needed and has received from my associates a radical extension and amplification, for there was no attempt here to introduce oral evidence. The opinion in Sheets v. Paine does not disclose what the oral evidence was that was offered, but excerpts from the record in that case furnished by counsel show that Paine sought to prove by the testimony of a witness that township 150 of range 58 government survey was identical with Field township, Nelson county. The Supreme Court of North Dakota held that this evidence was incompetent, and it is as clear as the language of an opinion can make it that stress was placed upon the fact that the evidence was oral, and that being oral it was inadmissible. That such is the point of the opinion of that court seems to me to be obvious from the most cursory reading.

Attention is directed by my associates to the fact that there were no rulings of the trial court in Sheets v. Paine upon the objections to the oral evidence, and no exceptions of counsel; the inference to be drawn being that the case on appeal was considered in the same light as though the best evidence of which the case was susceptible had been received. This, I take it, is without significance for two reasons: (1) The Supreme Court of North Dakota in its opinion attached no importance to those omissions at the trial, and did not even direct attention to them. It assumed that the question whether oral evidence was admissible was properly presented, and it certainly is not our province to search the record before that court for facts and conditions not recited or referred to in its opinion. We should take that opinion as we find it. The inquiry here is, what did the Supreme Court of North Dakota decide in Sheets v. Paine? It expressly said that the evidence was oral, that it was objected to, and that because it was oral it was inadmissible. And this presents the true meaning, scope, and purport of that case in its relation to the case now before us, which does not involve the admissibility of oral evidence. These observations apply with equal force to the one question to which an

objection was not noted at the trial of Sheets v. Paine. Other ques--
tions of similar purport had been asked and properly objected to, on the
ground that the matter was not a proper subject for oral testimony.
Even if counsel should have incumbered the record with the constant
repetition of the same objection to like questions, which is doubtful,
the Supreme Court of the state ignored the omission, and expressly
recited that the evidence was objected to.

2. The trial of Sheets v. Paine was to the court of first instance
without a jury. The defendant was defeated, and he appealed to the
Supreme Court. The North Dakota practice in cases tried without
a jury is similar to that in equity in the federal courts, in that all of
the evidence, whether objected to or not, must be received. Either
party may have his objections to the evidence noted as it is offered,
but the trial court does not rule on them, and consequently no excep--
tions are taken. On appeal to the Supreme Court the defeated party
may demand and receive a trial anew of the entire case, in which
event all incompetent and irrelevant evidence properly objected to
at the trial is disregarded by the Supreme Court. Section 5630, Rev.
Codes N. D. 1899. In the opinion in Sheets v. Paine it is specifically
recited that Paine demanded a trial anew of the entire case. In the
prevailing opinion in the case at bar reference is made to Power v.
Bowdle, 3 N. D. 107, 54 N. W. 404, 21 L. R. A. 328, 44 Am. St.
Rep. 511, as having been followed in Sheets v. Paine. The question
in that case was as to the admissibility of evidence (necessary parol)
to show the existence of a general usage of language in designating
lands by certain symbols, which the court had previously decided to
be without intelligible signification. The court held that it took ju-
dicial notice of the general usage of language, and that since the sym-
bols relied on to furnish a good description of lands upon an assess-
ment roll were unintelligible, the evidence was not admissible. There
is much in this that is in accord with the later case of Sheets v. Paine,
but nothing that is pertinent to the case at bar. There is, however,
an observation in Power v. Bowdle which indicates that even the rule
excluding parol evidence which that court announced was not deemed
to be of unvarying application. It said:

"It is also true that where premises have acquired a name or description
by repute, though not technically correct, the same will suffice for purposes of
taxation, and parol evidence is competent to show the name acquired by repute
coincides with the proper description of such land."

As authority for this doctrine, which it approved, the North Da-
kota court cited Gilfillan v. Hobart, 34 Minn. 67, 24 N. W. 342, in
which it was said:

"We understand the defendants' position to be that the description of the
lots as being in Bottineau's addition was sufficient, if that was a designation
by which they were commonly known. This is in analogy, we take it, to the
rule in accordance with which a person may, by reputation, acquire a name,
which, although not the name originally given to him in baptism or otherwise,
will be a good name for and against him in business transactions and in
legal proceedings. No reason is perceived why this rule should not be appli-
cable to the names of things as well as of persons; nor why the owner of
property, upon which he has failed to pay taxes, should not be bound to know

that by common repute his property has acquired a well-known designation, differing from its original or technically accurate designation, nor why such reputed designation should not be sufficient in tax proceedings. A description or designation which ascertains the premises, as a well-known and commonly reputed one does, must be sufficient."

As to the case of Paine v. Germantown Trust Company (C. C. A.) 136 Fed. 527, decided by this court upon the authority of Sheets v. Paine, the opinion in that case discloses nothing indicating that the evidence offered to explain a defective description upon the assessment roll consisted of records of the county in which the land was located. On the contrary, Judge Philips, who spoke for the court, said in the opinion:

"The appellant here sought to show by parol evidence that Dahlen township embraced the government surveyed township 154 of range 57. Of this the court said in the Sheets Case"

—And then followed the quotation from the decision of the Supreme Court of North Dakota in Sheets v. Paine that oral evidence was inadmissible.

Recourse is had to parts of the record in the Germantown Trust Company Case not shown in the opinion, for the purpose of indicating that the evidence there in question was really record evidence or its equivalent, although I think that the above quotation from the opinion demonstrates quite clearly that the court treated the evidence as oral, and therefore decided the case upon the authority of Sheets v. Paine. It is said that the parties to the Germantown Trust Company Case stipulated at the trial that:

"The township of Dahlen, Nelson county, North Dakota, named in the heading of each of said assessment rolls, is, and was at the times said assessments were respectively made, the government township numbered 154 in range 57 in said county."

And that the stipulation was "made for the purpose of use as evidence of the facts herein stated upon the trial of this action, and to dispense with the necessity of introducing the records or certified copies of the records bearing upon said matter."

An inspection of the stipulation from which the above parts were excerpted discloses this situation: It consists of 12 separately numbered paragraphs relating to matters of evidence pertinent to the case. Most of them, but not all of them, refer to public records concerning the levy and collection of taxes. The extract above quoted as to the identity of Dahlen township is embodied in the third paragraph. The eleventh paragraph is exclusively a recital that, aside from a tender in the bill of complaint, there had been no tender or offer to repay to the tax title holder the taxes paid by him. This paragraph does not and could not pertain to a matter of record. Its subject-matter rested in parol. The twelfth and last paragraph of the stipulation contains the recital above quoted that the stipulation was made for the purpose of use as evidence of the facts therein stated, and to dispense with the necessity of introducing the records or certified copies of the records. Now, in the prevailing opinion in the case at bar this last paragraph is brought into immediate juxta-

position with the excerpt from the third. Almost any construction of a written instrument may result from a hitching together of widely separated clauses. It seems to me to be doubtful that the intention of the parties to a writing is correctly shown by taking a clause from the end, and bringing it forward to a connection with one near the beginning, when there are passed on the journey other matters which may show the sense of the combination to be inexact. In none of the parts of this stipulation referring to official records is there the slightest mention that they relate to or afford proof of the fact that the township of Dahlen was identical with the government township. These things being true, I question whether it is a reasonable inference that the stipulation in that case was one that the records of the county showed the identity between the civil township and the township of the government survey. Again, the stipulation in that case is not like the one now before us. At the most, the former is merely a stipulation that a certain civil township was identical with the township according to the government survey. This might mean that the identity was merely casual or accidental. It is not a stipulation that the public officers, acting under the express authority of law, have duly and purposely made them identical. It is familiar doctrine that where the law requires certain facts of a jurisdictional character to be shown upon the records, and not to rest merely in parol, a stipulation of counsel that the facts exist is not sufficient. But, however all this may be, the question always turns back to the proper construction of Sheets v. Paine, and that, it seems to me, is not doubtful. When lands adjacent to a city are platted into outlots, or lands within a city are platted into blocks and lots with streets and alleys, how do the descriptions of the various minor parcels get upon the assessment rolls for purpose of taxation? The taxing officers find them upon the public records when the plats are recorded, as required by law. May a court do less when a plaintiff chooses to describe the land claimed in his petition by the numbers of the government survey, instead of by the new name appearing upon the records?

When the Supreme Court of North Dakota decides that the description by government survey of lands assessed and taxed cannot be changed by official acts of public officers, though authorized by state law, that the description of such property upon the assessment roll must be in every respect according to original numbers of township and range, and that resort cannot be had to the public records of the county showing a change of designation or description, such decision will of course be binding upon this court in a case arising in that state. But I take it that while that court may so decide, it has not yet done so.